**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DARRELL L. ORVIS,**

                                        **Plaintiff,**

        **vs.**                                                 **7:15-cv-00755**
                                                                **(MAD)**

**COMMISSIONER OF SOCIAL SECURITY,**

                                        **Defendant.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

**CONBOY, MCKAY, BACHMAN &**            **PETER L. WALTON, ESQ.**
**KENDALL, LLP**
407 Sherman Street
Watertown, New York 13601-9990
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**      **ROBERT R. SCHRIVER,**
Office of Regional General Counsel       **SPECIAL AUSA**
Region II
26 Federal Plaza, Room 3904
New York, New York 10278
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

        Darrell Lee Orvis ("Plaintiff") commenced this action on June 18, 2015, pursuant to 42

U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a decision of the Commissioner of Social

Security (the "Commissioner") denying Plaintiff's application for Disability Insurance Benefits

("DIB").  *See* Dkt. No. 1.

**II. BACKGROUND**

Plaintiff's date of birth is July 16, 1948, which made him 60 years old on June 5, 2009, the date of alleged disability onset. *See* Dkt. No. 9, Administrative Transcript ("T."), at 155. Plaintiff graduated from high school in 1966. *See id.* at 160. Plaintiff has not completed any vocational training, but he had a commercial driver's license when he was working. *See id.* at 47. Plaintiff is married and resides with his spouse. *See id.* at 46. He has two adult sons and three grandchildren. *See id.* Plaintiff testified that his typical day starts at about 7:00 a.m. *See id.* at 55, 58. He gets a newspaper, drinks coffee, and listens to the news until about 9:30 a.m. *See id.* at 55. Plaintiff then goes for a walk. *See id.* He is able to walk up to five miles. *See id.* at 175. Upon return, he will "putter around the house" or mow his lawn until lunch time. *See id.* at 55. Plaintiff then has lunch, and, in the afternoon, sometimes his grandchildren will visit or he will read. *See id.* Around the time of the hearing, Plaintiff was going fishing in the afternoon with his son. *See id.*

Plaintiff reported that he is independent in his personal care, including dressing, bathing, hair care, shaving, feeding, and toileting. *See id.* at 169-70. He is also able to take his medication without reminders. *See id.* at 170. He is able to prepare his own meals daily, but his spouse usually prepares dinner. *See id.* at 170-71. Plaintiff is able complete household chores without any assistance, such as cleaning, household repairs, mowing the law, and minor car repair. *See id.* at 171. He is able to go outside several times a day and travels by walking, driving, and being a passenger in a car. *See id.* Plaintiff completes his shopping for food, clothes, and tools in stores. *See id.* at 172. Those trips occur two or three times a week and last one or two hours in duration. *See id.* He is able to handle household finances. *See id.* On a daily basis, Plaintiff's hobbies include watching television, reading, and fishing. *See id.* at 173. Since the onset of his disability, Plaintiff states that he spends more time watching television and reading. *See id.* Plaintiff does

not describe any changes or limitations since the onset of his disability, except that he seems to want to stay home more. *See id.* at 169, 171-73.

Although Plaintiff indicates that he has difficulty establishing and maintaining social relationships, he states that he is able to spend time with others during visits, sharing meals, talking on the phone, and fishing, sometimes on a daily basis. *See id.* Plaintiff is also able to attend church one to three times per week. *See id.* Plaintiff's alleged disabilities do not limited his ability to lift, stand, walk, sit, climb stairs, kneel, squat, reach, use his hands, see, or talk. *See id.* at 173-74. He wears hearing aids to compensate for his hearing loss. *See id.* at 174-75. Plaintiff reports that he has difficulty paying attention and describes it as not staying on task. *See id.* at 175. However, he is able to finish tasks that he starts as well as follow written and spoken instructions. *See id.* at 175. Plaintiff has difficulty with his anger and irritability, which impairs his work relationships, and he has problems with authority figures. *See id.* He has not ever lost a job because of problems with getting along with people. *See id.* at 176.

Plaintiff's disability of post traumatic stress disorder ("PTSD") began in 1967 while fighting as a member of the United States military in Vietnam. *See id.* at 176. He has flashbacks and dreams, which cause him to feel depressed, angry, anxious, and panicked. *See id.* at 176. These attacks occur on a daily basis, according to Plaintiff, but he is able to continue to do other things like shop or drive. *See id.* at 177. At the disability hearing, Plaintiff's description involved episodes of anger and the the inability to be in crowds. *See id.* at 49. These anger episodes are brought on because he does not have patience when something is not being done correctly in his opinion. *See id.* at 51. Plaintiff also testified that he can be hyper-vigilant, meaning that he is aware of his surroundings and alert. *See id.* at 57. Plaintiff also testified that he is able to sleep "pretty good" but certain months he has nightmares about the war. *See id.* at 58. He describes

these episodes as "unrestful sleep." *See id.* at 58. When these events occur, he is tired. *See id.* If he is awoken by these nightmares, he does not have a problem going back to sleep. *See id.* at 58. Plaintiff goes to sleep at 11:00 p.m. and wakes at 7:00 a.m., and he is aware that he had an unrestful night if his spouse is not in bed with him in the morning. *See id.* at 58, 62.

Plaintiff has worked for 39 years, from 1970 until 2009, with these same symptoms. *See id.* at 60-61. The onset of disability date of June 5, 2009 is the date that Plaintiff was diagnosed with PTSD; it does not designate the onset of symptoms. *See id.* at 61. When he was able to read information about PTSD, Plaintiff became aware for the first time that he had these symptoms for almost forty years. *See id.* at 60-61. In addition to PTSD, Plaintiff also claimed disability due to hearing loss and tinnitus. *See id.* at 159. Plaintiff has hearing aids for both ears, but he chooses not to wear them in crowds because there is a buzzing noise. *See id.* at 63. Plaintiff testified that he also has a constant ringing in his ears. *See id.* at 63. Plaintiff claims to have problems concentrating. *See id.* at 69. He describes that mowing his lawn takes two hours and, if he does not have anything else to do that day, he will take a break after an hour and read for forty-five minutes before completing the second hour of mowing. *See id.* Plaintiff also describes that he will complete an hour-long task assigned to him as fast as possible and then lets his mind wander the rest of the time. *See id.*

Plaintiff worked in oil refineries from 1970 until 1989. *See id.* at 62. Within the past relevant work period, Plaintiff worked as a truck driver for a Decra Roofing Systems, Inc. from 1997 through 2006. *See id.* at 147-49, 195. In that position, Plaintiff also built and delivered loads, loaded and unloaded trucks, and used a forklift. *See id.* at 195. From 2006 through 2009, Plaintiff worked as a warehouse manager for Steel Roof Supply Company where he built and delivered loads, used a forklift, drove a truck, managed employees, ordered supplies, and

4

managed inventory. *See id.* at 195. In April 2009, Plaintiff was laid off from that position due to a downturn in the economy, and his decades-long symptoms were diagnosed as PTSD in June 2009. *See id.* at 61, 159.

As referenced, Plaintiff served in the U.S. Marine Corps from December 30, 1966 through January 15, 1970. *See id.* at 138. The majority of Plaintiff's medical evidence is from the VA Health Care System. *See id.* at 221-83, 292-307, 357-459. Plaintiff received medical treatment from the VA Oakland Outpatient Clinic and the VA Oakland Behavioral Health Clinic in Oakland, California from October 2009 through June 2011. *See id.* at 221-83. Plaintiff also received medical treatment from the Syracuse VA Medical Center, from May 30, 2012 through April 29, 2013, and the VA Behavioral Health Facility, from January 27, 2012 through April 27, 2012. *See id.* at 292-307, 366-459. In addition, Plaintiff's hearing was evaluated by Manoj Kumar, M.D., an ENT specialist, on August 8, 2012. *See id.* at 336. Plaintiff was assessed by Jerry Jurgenson, Ph.D., a psychologist, on June 1, 2009 and June 24, 2013.

On April 27, 2012, Plaintiff protectively filed an application for DIB and a period of disability. *See id.* at 138-39. This application was initially denied by the State agency under the Social Security Regulations pursuant to 20 C.F.R. § 404.1503. *See* T. at 78, 83. On September 27, 2012, Plaintiff requested a hearing by an administrative law judge. *See id.* at 85. A video-conference hearing was conducted on September 12, 2013 before Administrative Law Judge Barry E. Ryan (the "ALJ"). *See id.* at 41-71. The ALJ made the following determinations after the hearing: (1) Plaintiff met the insured status requirements of the Social Security Act through June 30, 2014; (2) Plaintiff has not engaged in substantial gainful activity since June 5, 2009, the date of alleged onset of disability; (3) Plaintiff's severe impairments include PTSD, alcohol abuse, and depression; (4) Plaintiff does not have an impairment or combination of impairments that

meet or medically equal the severity of a Listed Impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listed Impairment(s)"); (5) Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, to understand and follow simple instructions and directions, to perform simple and some complex tasks with supervision and independently, to maintain attention/concentration for simple and some complex tasks, to regularly attend to a routine and maintain a schedule, to relate and interact with others to the extent necessary to carry out simple tasks, to handle reasonable levels of simple work-related stress, and to make simple decisions directly related to the complection of his tasks in a stable, unchanging work environment, but Plaintiff should avoid work requiring more complex interaction with others or joint effort work to achieve work goals; (6) Plaintiff is unable to perform any past relevant work; and (7) considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform. *See id.* at 19-36. Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act. *See id.* at 36.

Plaintiff timely filed a request for a review of the ALJ's decision with the Appeals Council, *see id.* at 14-15, and, in a notice dated April 22, 2015, the request was denied rendering the ALJ's decision the Commissioner's final decision, *see id.* at 1-6. Plaintiff then commenced this action for judicial review of the denial of his claim by the filing of a complaint on June 18, 2015. *See* Dkt. No. 1. Both parties have moved for judgment on the pleadings. *See* Dkt. Nos. 11, 14. The Court orders that the Commissioner's decision is affirmed.

## III. DISCUSSION

### A. Standard of Review

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine de novo whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 447 (2d Cir. 2012); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). The Court must examine the administrative transcript as a whole to determine whether the decision is supported by substantial evidence and whether the correct legal standards were applied. *See Brault*, 683 F.3d at 447; *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009); *Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998). "A court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if it appears to be supported by substantial evidence." *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir. 1987)). The Second Circuit has explained that upholding a determination based on the substantial evidence standard where the legal principals may have been misapplied "creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986. However, if the record is such that the application of the correct legal principles "could lead to only one conclusion, there is no need to require agency reconsideration." *Id.*

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations and quotation marks omitted). If supported by substantial evidence, the Commissioner's factual determinations are conclusive, and the court is not permitted to substitute its analysis of the evidence. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982) ("[The court] would be derelict in [its] duties if we simply paid lip service to this rule, while shaping [the court's] holding to conform to

our own interpretation of the evidence").  In other words, this Court must afford the

Commissioner's determination considerable deference, and may not substitute "its own judgment

for that of the [Commissioner], even if it might justifiably have reached a different result upon a

de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.

1984).  This very deferential standard of review means that "once an ALJ finds facts, [the Court]

can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" *Brault*,

683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)).

**B.    Analysis**

Plaintiff contends that the ALJ's determination denying his disability application should be

remanded back to the Commissioner for the following reasons: (1) Plaintiff met the criteria for a

Listed Impairment under § 12.06 Anxiety Related Disorders; (2) the RFC is not supported by

substantial evidence because the treating physician rule was not properly applied; (3) the ALJ did

not allow Plaintiff time to gather additional medical evidence; (4) the ALJ did not follow the

special technique for evaluating mental conditions under 20 C.F.R. § 404.1520a; (5) Plaintiff's

credibility was not properly evaluated because the ALJ failed to properly analyze the factors

related to Plaintiff's pain and other symptoms; and (6) there is no substantial evidence to support

the ALJ's conclusion that there is significant work in the national economy that Plaintiff could

perform.  *See* Dkt. No. 11 at 12-27.

*1. Five-step analysis*

For purposes of both DIB and SSI, a person is disabled when he is unable "to engage in

any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C.

§ 1382c(a)(3)(A).

> The Social Security Administration regulations outline the five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120

(2d Cir. 2008)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v).

### 2. Listed impairment

At step three of the disability analysis, a plaintiff who meets or medically equals one of

the Listed Impairments in 20 C.F.R. Part 404, Subpt. P, App. 1 ("Listed Impairments"), is

"conclusively presumed to be disabled and entitled to benefits." *Dixon v. Shalala*, 54 F.3d 1019,

2022 (2d Cir. 1995). Plaintiff contends that the ALJ failed to properly evaluate his PTSD under

the Listed Impairments of § 12.06 (Anxiety Related Disorders) of 20 C.F.R. Part 404, Subpt. P,

App. 1 ("Section 12.06"). *See* Dkt. No. 11 at 12-16. Section 12.06 provides "[t]he required level

of severity for these disorders is met when the requirements in both A and B are satisfied, or

when the requirements in both A and C are satisfied." 20 C.F.R. Part 404, Subpt. P, App. 1 §

12.06. The ALJ found in this case that Plaintiff did not satisfy the requirements found in

paragraph B or paragraph C and, therefore, concluded that Plaintiff did not meet or medically

equal this Listed Impairment. *See* T. at 24-25. Plaintiff does not appeal the determination that he

does not meet the criteria in Paragraph C.

The criteria for paragraph B is met if the plaintiff has a medically determinable mental impairments that result in at least two of the following: (1) marked restriction of activities of daily living, (2) marked difficulties in maintaining social functioning, (3) marked difficulties in maintaining concentration, persistence, or pace, or (4) repeated episodes of decompensation, each of extended duration. *See* 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.06 (B). Plaintiff does not contend that he has repeated episodes of decompensation. *See* Dkt. No. 11 at 16. Plaintiff acknowledges that the medical evidence demonstrates that he was assessed as moderately limited in these areas, but he argues that the combination of his limitations in the areas of daily living, social functioning, and concentration is medically equivalent to marked restrictions in two of these areas. *See id.* at 16. An ALJ can find medical equivalence to a listed impairment where a plaintiff exhibits all of the findings in a particular listing but one or more of the findings are not as severe as specified, if a plaintiff has "*other findings* related to [his or her] impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. § 404.1526(b)(1) (emphasis added).

Here, Plaintiff has misapplied medical equivalence in an attempt to bypass the requirement of marked limitations in two of the four areas set forth in the Regulations. Plaintiff does not have "other findings" that are medically equal to one of the areas in which he does not meet the severity requirements. Plaintiff wants the Court to find that impairments in three of the four categories, even though not marked impairments, should be medically equivalent to marked impairment in two categories. This interpretation would be in contravention of the plain language of this Listed Impairment as well as the regulatory definition of medical equivalence.

Moreover, the ALJ specifically stated in his decision that he considered Plaintiff's "mental impairment and combination of impairments" when assessing the four functional areas of

paragraph B.  T. at 24.  There is substantial evidence to support the ALJ's finding that Plaintiff did not meet the criteria in paragraph B.  The consultative examiner, Justine Magurno, M.D., found that Plaintiff cooked, shopped, and cared for his own needs.  *See id.* at 25, 310.  Dr. Magurno also reported that Plaintiff watches television, reads, and fishes, indicating concentration for these activities.  *See id.* at 25, 310.  The consultative psychiatric evaluator, Richard Oman, Ed.D., notes that Plaintiff was able to dress, bathe, groom himself, prepare food, shop, mow his yard, and fish.  *See id.* at 25, 315.  As noted by the ALJ, Plaintiff testified that he is able to drive, walk for exercise, take care of his yard, and fish.  *See id.* at 25, 50, 55.  In his assessment of Plaintiff's "mental impairment and combination of impairments," the ALJ also relied on the Psychiatric Review Technique Form prepare by Dr. Tzetzo, the state agency review psychiatrist.  *See id.* at 27, 318-328.  Dr. Tzetzo rated Plaintiff's functional limitations from mild to moderate in the four areas of Paragraph B criteria.  *See id.* at 328.  The ALJ specifically evaluated Plaintiff's impairments and combination of impairments before finding that Plaintiff does not meet the Listed Impairment of § 12.06, Anxiety Related Disorders, and the Court finds that this determination is supported by substantial evidence in the transcript.

### 3. Evaluating Opinion Evidence

Plaintiff contends that the treating physician rule was not properly applied by the ALJ to the opinion of Dr. Cheryl Morrier, Ph.D., a treating psychologist.  *See* Dkt. No. 11 at 16-21.  Specifically, Plaintiff argues that Dr. Morrier's opinion should have been accorded controlling weight because her opinion is supported by ample clinical evidence and is not inconsistent with other substantial evidence of record.  *See id.* at 18.  Dr. Morrier's medical opinions about the severity of Plaintiff's impairments and symptoms can be entitled to "controlling weight" when the opinions are "well-supported by medically acceptable clinical and laboratory diagnostic

techniques and [are] not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also* 20 C.F.R. § 404.1527(a)(2); *Martin v. Astrue*, 337 Fed. Appx. 87, 89 (2d Cir. 2009) ("Although the final responsibility for deciding issues relating to disability is reserved to the Commissioner, . . . an ALJ must give controlling weight to a treating physician's opinion on the nature and severity of the [plaintiff's] impairment when the opinion is well-supported by medical findings and not inconsistent with other substantial evidence."); *Williams v. Comm'r of Soc. Sec*., 236 Fed. Appx. 641, 643-44 (2d Cir. 2007) (noting that inconsistent evidence can be in the form of opinions of other medical experts).

If an ALJ refuses to assign a plaintiff's treating physician's opinion controlling weight, he or she must state a good reason for that determination. *See Saxon v. Astrue*, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011). The "[f]ailure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (quoting *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998)). The regulations list factors the ALJ should consider when evaluating the appropriate weight to assign to medical opinions, including a treating source's opinion that is not assigned controlling weight. *See* 20 C.F.R. §§ 404.1527(c). The factors include (1) the frequency of the examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the treating physician's opinion; (3) the consistency of the opinion with the record as a whole; (4) whether the opinion is from a specialist; and (5) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). A treating physician's opinion can be contradicted by other substantial evidence, such as opinions of other medical experts. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)); *Veino v. Barnhart*, 312 F.3d 578,

588 (2d Cir. 2002). The less consistent an opinion is with the record as a whole, the less weight it is to be given. *Otts v. Comm'r of Soc. Sec.*, 249 Fed. Appx. 887, 889 (2d Cir. 2007).

In this case, the ALJ detailed dates and the progression of Plaintiff's mental health treatment from June 1, 2009 through April 29, 2013, including the treatment by Dr. Morrier. *See* T. at 28-33. The ALJ assigned little weight to the medical source statements completed by Dr. Morrier regarding Plaintiff's mental ability to perform work-related activities. *See id.* at 32. Plaintiff argues that the severity of impairments assessed by Dr. Morrier should have been given controlling weight because her opinions were consistent with another treating psychologist, Jerry Jurgenson, Ph.D., and examining psychiatrist, Nagui Achamallah, M.D. *See* Dkt. No. 11 at 17-21. Dr. Morrier completed two medical source statements of ability to do work-related activities. *See* T. at 346-48, 460-62. The statement dated October 13, 2012 states that Plaintiff's abilities to understand and remember complex instructions, to carry out complex instructions, and to make judgments on complex work-related decisions are moderately to markedly restricted. *See id.* at 346. In addition, Dr. Morrier stated that Plaintiff's ability to interact appropriately with co-workers and to respond appropriately to usual work situations and to changes in a routine work setting are moderately to markedly affected by his impairment, among other findings. *See id.* at 347.

Dr. Morrier's subsequent medical source statement dated June 28, 2013 documents that Plaintiff's abilities to understand and remember complex instructions, to carry out complex instructions, and to make judgments on complex work-related decisions are markedly affected by his impairments, and his abilities to interact appropriately with the public, to interact appropriately with co-workers, and to respond appropriately to usual work situations and to changes in a routine work setting are markedly affected, among other findings. *See id.* at 460-62.

The ALJ acknowledged that Dr. Morrier was a treating physician entitled to controlling weight as long as her assessment was supported by medically acceptable clinical and laboratory diagnostic techniques and was not inconsistent with the other substantial evidence in the claimant's case record. *See id.* at 33.

The Court finds that the ALJ properly assessed Dr. Morrier's opinion as a treating medical providers, pursuant to 20 C.F.R. § 404.1527. The ALJ set forth Plaintiff's mental health treatment, including the frequency, nature, and extent of treatment by his providers. *See* T. at 28-31. The ALJ also discussed the supporting medical evidence of Plaintiff's impairments in mental functioning due to PTSD, including the global assessment of functioning ("GAF") scores by Dr. Jurgenson and the evaluation of Dr. Achamallah. *See id.* at 28-33, 217, 219, 221-23, 464. However, as discussed by the ALJ, Dr. Morrier's opinions that Plaintiff was markedly limited in his mental functioning was not supported by her treatment notes or the GAF score she assigned, which placed him in a category of moderately limited functioning. *See id.* at 303. Dr. Morrier's treatment notes describes Plaintiff as "engaged, making good eye contact" with spontaneous and productive speech, clear and coherent responses, controlled impulses, and no disturbances to his gross memory, concentration, attention or abstraction. *See id.* at 302.

The severity of Plaintiff's mental impairments are also inconsistent with the record as a whole, including Plaintiff's testimony about his activities of daily living, the reports of daily living in the medical records, and the assessments and consultative reports of other medical experts. Plaintiff testified that he is able to spend time with friends and family, including his grandchildren. *See id.* at 55, 397. He is able to complete chores around the house such as cleaning, mowing the lawn, preparing meals, house repairs, and minor car repairs. *See id.* at 171. Plaintiff can travel independently, and he completes shopping for food, clothes, and tools in stores

two or three times per week. *See id.* at 172. Plaintiff reported that he is able to complete tasks that he starts and follow spoken and written directions. *See id.* at 175. Plaintiff is able to watch television, read for significant portions of his day, walk, drive, and fish with his son. *See id.* at 171, 173. Plaintiff is able to go to restaurants with his family, socialize in person and on the phone, and attend church one to three times per week. *See id.* at 169, 171-73, 296. In addition, Plaintiff continues to travel to Texas, California, and Nevada for weeks at a time for family and social events. *See id.* at 293, 395, 397.

Also, as noted by the ALJ, Dr. Morrier's medical source statement is inconsistent with the psychiatric review completed by Dr. Tzetzo, who found Plaintiff to have mild to moderate limitations in his functional abilities. *See id.* at 318-331. Dr. Tzetzo also found that Plaintiff was not significantly limited in understanding and memory, moderately limited in some areas of sustained concentration and persistence, moderately limited in some areas of social interaction, and moderately limited in adaptation. *See id.* at 332-35. The consultative psychologist, Richard Oman, Ed.D., opined that Plaintiff could follow and understand simple directions and perform simple tasks independently. *See id.* at 315. Dr. Oman also concluded that Plaintiff can maintain attention and concentration, maintain a regular scheduled, learn new tasks, perform complex tasks independently, and make appropriate decisions, which the ALJ cited in his decision as contrary to the findings of Dr. Morrier. *See id.* at 315. Accordingly, the Court finds that the ALJ properly assessed Dr. Morrier's opinion, as a treating medical provider, pursuant to the Social Security Regulations. Further, the Court also finds that the ALJ's assignment of little weight to Dr. Morrier's opinion is supported by substantial evidence.

Plaintiff also argues that the ALJ erred by declining to leave the record open for thirty days after the disability hearing. *See* Dkt. No. 11 at 20-21. According to Plaintiff, this was a

violation of the ALJ's duty to develop the administrative record prior to making a determination. *See id.* The ALJ stated his concern that this claim was filed fourteen months earlier and the request for a hearing was made twelve months earlier. *See* T. at 45. He referenced doubt that there is any other medical evidence that exists. *See id.* at 46. However, he advised that Plaintiff's counsel will have at least nine days "to decide if there is any other evidence out there that's worthy of being submitted," and he stated he would give Plaintiff time to submit that evidence if it exists. *See id.* at 46. Again, at the end of the hearing, the ALJ repeated that he would not be looking at this case for eleven days, at the earliest. *See id.* at 70. The ALJ stated "[i]f there is something out there that you want to submit that you think is important, you're always welcome to do so," because "[t]he record never closes in these cases, so send it whenever you want." *See id.* at 70. Based upon the hearing transcript, there is no basis for Plaintiff's argument.

### 4. Evaluation of Mental Impairments

Plaintiff next argues that the ALJ committed a legal error by not following the special technique for evaluating mental impairments pursuant to 20 C.F.R. § 404.1520a. *See* Dkt. No. 11 at 21-24. The Regulation requires the ALJ to first evaluate the symptoms, signs, and laboratory findings to determine whether the plaintiff has a medically determinable mental impairment and, if there is an impairment, specify those symptoms, signs, and laboratory findings that substantiate the presence of the impairments in a documented form. *See* 20 C.F.R. § 404.1520a(b). The degree of functional impairment must then by rated. *See id.* This special technique was completed, and Plaintiff's medical evidence was determined to establish affective disorders, anxiety-related disorders, and substance addiction disorders. *See* T. at 318, 321, 323, 326, 329-31. Plaintiff's functional limitations were rated pursuant to the regulation, and the severity of his impairments were evaluated pursuant to 20 C.F.R. § 404.1520a(b-d). *See* T. at 328, 332-35. This

special technique was appropriately documented pursuant to 20 C.F.R. § 404.1520a(e), *see* T. at 318-30, 332-35, and the ALJ discussed the pertinent findings and conclusions in his decision with the significant history, examination findings, and the functional limitations that he considered in reaching his conclusion, *see id.* at 23-33. The Court finds that the ALJ properly applied the special technique for the evaluation of mental impairments in conformance with the Regulation.

### 5. Credibility Analysis

Plaintiff contends that the ALJ failed to properly evaluate his credibility as it relates to the severity of symptoms. *See* Dkt. No. 11 at 24-28. An ALJ assesses a plaintiff's subjective symptoms using a two-step process. *See* 20 C.F.R. §§ 404.1529(c)(1), 404.1545(a)(3), (e); SSR 96-7P, 1996 WL 374186, at *1. At the first step, the ALJ must determine whether a plaintiff has an underlying impairment that is established by acceptable clinical diagnostic techniques and could reasonably cause a plaintiff's symptoms. *See* SSR 96-7P, 1996 WL 374186, at *2. If an impairment is shown, the ALJ "must evaluate the intensity, persistence, and limiting effects of the [plaintiff's] symptoms to determine the extent to which the symptoms limit the [plaintiff's] ability to do basic work activities." *See id.* at *2. "When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ must assess the credibility of the claimant's statements considering the details of the case record as a whole." *Wells v. Colvin*, 87 F. Supp. 3d 421, 431 (N.D.N.Y. 2015); *see also Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999).

The entire case record includes a plaintiff's history, laboratory findings, a plaintiff's statements about symptoms, statements and information provided by treating and non-treating physicians, and statements from other people that describe how the symptoms affect a plaintiff. *See* 20 C.F.R. §§ 404.1529(c)(1), 404.1545(a)(3), (e); SSR 96-7P, 1996 WL 374186, at *1. Factors that are relevant to a plaintiff's symptoms include (1) the plaintiff's daily activities, (2)

location, duration, frequency, and intensity of symptoms, (3) precipitating and aggravating factors, (4) medications and their side effects, (5) treatment received, (6) measures used to alleviate symptoms, (7) and other factors concerning functional limitations and restrictions due to the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

In this case, the ALJ found that Plaintiff had underlying, medically determinable impairments that could reasonably be expected to produce Plaintiff's alleged symptoms. *See* T. at 22. However, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not fully credible. *See id.* Contrary to Plaintiff's contention, the Court finds that the ALJ properly evaluated Plaintiff's credibility. In accordance with the factors outlined in the Regulation, the ALJ extensively reviewed Plaintiff daily activities. *See id.* at 31. The evidence of Plaintiff's activities of daily living are contrary to the claimed intensity of his symptoms. Plaintiff claims that, due to his impairments, his ability to function has been substantially diminished, and he claims to have anger issues and that he does not like to be around people. *See id.* at 49-69. Plaintiff claims that he is unable to focus and stay on task. *See id.*

However, Plaintiff's testimony and reports to medical providers indicates that he is able to spend time with friends and family, including his grandchildren. *See id.* at 55, 397. He is able to complete chores around the house, including cleaning, mowing the lawn, house repairs, and minor car repairs. *See id.* at 171. Plaintiff can travel independently, and he shops two or three times per week for food, clothes, and tools. *See id.* at 172. Plaintiff reported that he is able to complete tasks that he starts and follow spoken and written directions. *See id.* at 175. Plaintiff is able to watch television, read for significant portions of his day, walk, drive, and fish with his son. *See id.* at 171, 173. Plaintiff is able to go to restaurants, socialize, and attend church. *See id.*

at 169, 171-73, 296. In addition, Plaintiff continues to travel to Texas, California, and Nevada for extended periods of time for family and social events. *See id.* at 293, 395, 397.

In his decision, the ALJ completed a discussion of the location, duration, frequency, and intensity of Plaintiff's symptoms, which he derived from Plaintiff's testimony and Plaintiff's medical records, and Plaintiff's consultative examinations. *See id.* at 22-33. Further, the ALJ's decision thoroughly reviewed Plaintiff's medical evidence, including the treatment that he received from his medical health providers. *See id.* The ALJ also relied on Plaintiff's testimony that his symptoms of PTSD had not changed on June 5, 2009, the date of alleged onset of disability, but that is the date Plaintiff was diagnosed with PTSD. *See id.* at 61. Plaintiff was able to work throughout his thirty-nine year work history with these symptoms. *See id.* at 31. Plaintiff's ability to maintain employment for thirty-nine years with the same symptoms is inconsistent with Plaintiff's claim that these symptoms prevented him from substantial gainful activity after a formal diagnosis.

The Court finds that the ALJ did not err in his credibility analysis and, further, the credibility determination is supported by substantial evidence in the record.

### *6. Vocational Expert*

The ALJ proceeded to step five of the disability analysis and found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy. *See id.* at 34. Plaintiff contends that it was error for the ALJ to rely on the vocational guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (2008), (the "Guidelines") instead of obtaining the testimony of a vocational expert. *See* Dkt. No. 11 at 26-27.

The Second Circuit has stated that "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the

guidelines." *Roma v. Astrue*, 468 Fed. Appx. 16, 21 (2d Cir. 2012) (internal quotation marks omitted) (quoting *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986)). A vocational expert's testimony, or other similar evidence, is required "when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines." *Id.* (quoting *Bapp*, 802 F.2d at 603). "A claimant's work capacity is 'significantly diminished' if there is an 'additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" *Id.* (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (quoting *Bapp*, 802 F.2d at 606)).

"The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857, *4 (1985). The Second Circuit has found that a plaintiff's mental condition does not limit his ability to perform unskilled work where he is able to carry out "simple instructions, deal[] with work changes, and respond[] to supervision" because his nonexertional limitations do not result in an additional loss of work capacity. *Selian v. Astrue*, 708 F.3d 409, 422 (2d Cir. 2013); *see also Zabala v. Astrue*, 595 F.3d 402, 410-11 (2d Cir. 2010).

In this case, the ALJ found that the opinion of a vocational expert was not necessary because Plaintiff's nonexertional limitations have little or no effect on the occupational base of unskilled work at all exertional levels. *See* T. at 35. The Court finds that the reliance on the guidelines was not legal error because the ALJ's determination that Plaintiff retains the ability to

meet the basic mental demands of unskilled work was supported by substantial evidence. As the ALJ had discussed, Plaintiff worked for thirty-nine years with his symptoms of PTSD, and the alleged onset of disability represented the date he was diagnosed, not the onset of new symptoms. *See id.* at 60-61. In addition, the ALJ cited the medical expert opinion from Dr. Oman, which supports that Plaintiff's nonexertional impairments do not limit his ability to perform unskilled work. *See id.* at 313-16.

Plaintiff contends that there is not substantial evidence to support the ALJ's determination because Plaintiff has postural difficulties due to lumbar spine range of motion limitations. *See* Dkt. No. 11 at 26. Plaintiff also argues that he has been fired from and suffered other employment problems due to his PTSD. *See id.* Contrary to his contentions, the substantial evidence supports that Plaintiff does not have any limitations in lifting, standing, walking, sitting, climbing stairs, knelling, squatting, reaching, using his hands, seeing, or talking. *See* T. at 173-74. Further, Plaintiff stated that he never lost a job because of problems with interacting with people. *See id.* at 176. The testimony establishes that Plaintiff worked for nearly forty years with PTSD. *See id.* at 60-61. Plaintiff worked from 1970 through 2009, and the longest employment was for eighteen or nineteen years working in an oil refinery. *See id.* at 62. Accordingly, the Court finds that the ALJ's determination to rely on the Guidelines was not legal error.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the Parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Commissioner's decision denying disability benefits is **AFFIRMED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED**

Dated: September 29, 2016
      Albany, New York

Mae A. D'Agostino
U.S. District Judge